# NATIONAL REGISTERED AGENTS, INC.
## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:   MICHAEL J. HARRINGTON
      ELI LILLY AND COMPANY
      LILLY CORPORATE CENTER
      INDIANAPOLIS, IN 46285-0000

SOP Transmittal #    AL12244

Telephone   (800) 767-1553
Fax   (609) 716-0820

Defendant:   ELI LILLY AND COMPANY

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of ALABAMA on this 6th day of October, 2005. The following is a summary of the document(s) received:

1)   **Title of Action:**   Sanquirnetta McCray-Martin v. Eli Lilly and Company, et al.

**M. J. HARRINGTON**

**OCT 0 7 2005**

2)   **Document(s) served:**

| | | |
|---|---|---|
| X  Summons | ___ Subpoena | ___ Injunction |
| X  Complaint | ___ Third Party Complaint | ___ Notice of: _____ |
| ___ Petition | ___ Demand for Jury Trial | |
| ___ Garnishment | ___ Default Judgement | ___ Mechanics Lien |
| | | X  Other:  Interrog.& Req. for Prod; Req. to Adm. |

3)   **Court of Jurisdiction/**
     **Case & Docket Number:**     Circuit Court of Bullock Co., AL
                                   CV 2005-107

4)   **Amount claimed, if any:**   to be determined

5)   **Method of Service:**

| | | | |
|---|---|---|---|
| ___ Personally Served By: | ___ Process Server | ___ Deputy Sheriff | ___ U.S. Marshall |
| X  Delivered Via: | X  Certified Mail | ___ Regular Mail | ___ Facsimile |
| ___ Other: _____ | | | |

6)   **Date and Time of Service:**   10/6/2005 4:24:44 PM

7)   **Appearance/Answer Date:**   30 Days

8)   **Plaintiff's Attorney:**   Frank Woodson
                                 Beasley, Allen, Crow
                                 218 Commerce St.
                                 Montgomery, AL 36104
                                 334-269-2343

9)   **Federal Express Airbill #**   790179182577

10)  **Call Made To:**  Not required

11)  **Special Comments:**

**NATIONAL REGISTERED AGENTS, INC.**

Copies To:

Transmitted by: Ethleen Bazzell

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for the informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take the appropriate action.

**ORIGINAL**

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number**<br><br>CV-2005-187 |
|---|---|---|

IN THE _____Circuit_____ **COURT OF** _____Bullock_____ **COUNTY**

**Plaintiff**      Sanquirnetta McCray-Martin      **v. Defendant**      Eli Lilly and Company

**NOTICE TO** Eli Lilly and Company, National Registered Agents, Inc.; 150 South Perry Street; Montgomery, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____Frank Woodson; Beasley, Allen, Crow, Methvin & Miles, P.C._____ WHOSE

ADDRESS IS _____218 Commerce Street; Montgomery, Alabama 36104_____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ____30____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☒ Service by certified mail of this summons is initiated upon the written request of _____Sanquirnetta McCray-Martin_____ pursuant to the Alabama Rules of Civil Procedure.
Plaintiff's attorney

Date 10/4/05 _____ _Shelia M. Youngs_ By: _ny_
                                                    Clerk/Register

☒ Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____.

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____ (Date)
_____ in _____ County,
Alabama on _____.
                    (Date)

Date _____

_____
Address of Server

_____      _____
                                        **Server's Signature**

_____
                                        **Type of Process Server**

IN THE CIRCUIT COURT OF
BULLOCK COUNTY, ALABAMA

**FILED IN OFFICE**

**OCT 03 2005**

CLERK-REGISTER, BULLOCK CO.

SANQUIRNETTA MCCRAY-MARTIN, )
)
      **Plaintiff,** )
)
      **vs.** )
)
ELI LILLY AND COMPANY; and )
YOLANDA BROWN, Sales )
Representative, and FICTITIOUS )
DEFENDANTS A, B, C, D, E, and F, )
being those persons, sales )
representatives, firms or corporations )
whose fraud, scheme to defraud, )
negligence, and/or other wrongful )
conduct caused or contributed to the )
Plaintiff's injuries and damages, and )
whose true names and identities are )
presently unknown to the Plaintiff but )
will be substituted by amendment when )
ascertained, )
)
      **Defendants.** )

CIVIL ACTION NO. _CV-2005-107_

**JURY TRIAL DEMANDED**

## COMPLAINT

### STATEMENT OF FACTS

1.   This is a civil action brought on behalf of Plaintiff, Sanquirnetta McCray-Martin. Plaintiff, Sanquirnetta McCray-Martin, is a citizen of the United States and the State of Alabama.

2.   Defendant, Eli Lilly and Company (hereinafter referred to as "Lilly"), is incorporated in the State of Indiana and has its principal place of business in Indianapolis, Indiana. At all times relevant herein, Lilly was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals and other products, including Zyprexa (Olanzapine). Lilly does business

in the State of Alabama and, on information and belief, at all times relevant, manufactured, advertised, marketed, promoted, sold and distributed Zyprexa in the State of Alabama.

3. Defendant Yolanda Brown (hereinafter referred to as "Brown"), whose address is currently unknown to Plaintiff, but will be substituted by amendment when ascertained, at all times relevant hereto, was a sales representative of Eli Lilly. Defendant Brown, upon information and belief, is a resident of the State of Alabama. At all times relevant hereto, Defendant Brown was in the business of marketing, selling and distributing the pharmaceutical Zyprexa.

4. Fictitious Defendants A, B, C, D, E, and F are those persons, sales representatives, district managers, firm or corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the injuries sustained by the Plaintiff, whose true and correct names are unknown to Plaintiff at this time, but will be substituted by amendment when ascertained. At all times relevant hereto, the Fictitious Defendants were in the business of marketing, selling and distributing the pharmaceutical Zyprexa in and from the State of Alabama.

5. The Plaintiff's claim accrued in whole or in part in Bullock County, and the Plaintiff resides in Bullock County. Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in Bullock County. Venue and jurisdiction is therefore proper. The claims of the Plaintiff herein satisfy the jurisdictional amount of this Circuit Court.

6. Defendant Lilly is engaged, or has been engaged in the design, manufacture, testing, analyzing, distribution, recommendation, merchandising, advertising, promotion,

supply and sale to distributors and retailers for resale to physicians, hospitals, medical practitioners and the general public, Zyprexa in the State of Alabama and sold and promoted the drug to Plaintiff, Sanquirnetta McCray-Martin, who ingested Zyprexa.

7.  As a direct and proximate result of the ingestion of Zyprexa, Plaintiff was caused to suffer injuries and damages, including but not limited to physical pain and suffering including excessive weight gain, metabolic syndrome, mental and emotional anguish and distress and economic loss.  Plaintiff was caused to suffer serious and permanent injuries to her health, strength and activity, and severe shock to her nervous system, and will continue to suffer mental pain, all to her general damage in a sum with the jurisdiction of this Court.

8.  As a direct and proximate result of the ingestion of Zyprexa Plaintiff was required to, and did, employ physicians to examine, treat and care for her, and Plaintiff incurred, and will incur hospital, medical and incidental expenses.

9.  As a further direct and proximate result of the ingestion of Zyprexa, Plaintiff was prevented from attending to her usual occupation and thereby sustained a loss of earnings and a diminished earning capacity.

10.  Zyprexa is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

11.  At all times relevant, the Defendants themselves, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distribute Zyprexa.

12.  Zyprexa has been widely advertised by the Defendants as effective treatment for bipolar disorder, with fewer adverse side effects than other treatments.

3

13. The Defendants, beginning in 1996, aggressively marketed and sold Zyprexa by falsely misleading potential users about the products and by failing to protect users from serious dangers which Defendants knew or should have known to result from use of Zyprexa.

14. Defendants widely and successfully marketed Zyprexa in the United States and in the District of Columbia. Defendants undertook advertising campaigns promoting the virtues of Zyprexa in order to induce widespread use of the product.

15. The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of Zyprexa was safe for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder.

16. Defendants purposefully minimized and understated health hazards and risks associated with Zyprexa. Defendants, through promotional literature, deceived potential users of Zyprexa and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. Defendants, falsely and fraudulently, withheld relevant information from potential users of Zyprexa.

17. Plaintiff is informed and believes and thereon alleges that total profits from the sale of Zyprexa exceed hundreds of millions of dollars.

18. At least as early as 1998, the medical literature conclusively revealed data which linked Zyprexa with causing diabetes mellitus. An indicative report was published on October 15, 1998 in the Society of Biological Psychiatry, Volume 44, Number 8,

4

pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." There are other numerous reports and studies throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, metabolic syndrome, diabetes and ketoacidosis. The known danger that Defendants said the product Zyprexa was causing hyperglycemia, metabolic syndrome and diabetes was never indicated by Defendants to the Plaintiff's physician who prescribed the product to Plaintiff. Plaintiff was ignorant of said defect of said product prior to ingesting Zyprexa.

19. The physician who prescribed Zyprexa to Plaintiff relied on the representations made to him by Defendants prior to the date of prescribing Zyprexa for use. The physician relied on the representations regarding the safety of Zyprexa and would not have recommended for use or prescribed Zyprexa if he had known the true facts regarding the safety of Zyprexa.

20. Prior to the date upon which the aforesaid product was prescribed for Plaintiff, Defendants knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, metabolic syndrome, diabetes mellitus or ketoacidosis and/or other injuries. Defendants failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

21. Defendants thereby acted with malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for

their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

## COUNT I

### (Strict Liability in Tort, Failure to Warn)

22. Plaintiff realleges paragraphs 1-19 of the Complaint as if set out here in full.

23. At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiff. The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Zyprexa, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed and in the manner recommended by Defendants.

24. Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein.

25. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder, involved substantial dangers not readily recognizable by the

6

ordinary user of the product.    Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to, the likelihood the user would gain excessive weight, develop diabetes mellitus, and/or develop metabolic syndrome.

26.    The Zyprexa designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants was further defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risks of injury from Zyprexa, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to, excessive weight gain, metabolic syndrome, and/or diabetes mellitus.

27. Plaintiff did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects.  These defects caused the herein described injuries and damages to Plaintiff.

28. Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

29. Plaintiff neither knew, nor had reason to know, at the time of the use of the aforesaid product or at any time prior there, of the existence of the foregoing described defect.

**WHEREFORE,** Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

7

## COUNT II

### (Alabama Extended
### Manufacturer's Liability Doctrine)

30.   Plaintiff realleges paragraphs 1-27 of this complaint as if fully set out herein.

31.   Plaintiff's claims are brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine.  The pharmaceutical drug Zyprexa (Olanzapine), designed, manufactured, sold and/or supplied by Defendants, was placed into the stream of commerce in a defective and unreasonably dangerous condition, as designed, taking into account the utility of the product and the risk involved in its use, and Defendants' product did reach Plaintiff without substantial change in the condition in which it was sold.

32.   The pharmaceutical drug Zyprexa (Olanzapine), designed, manufactured, distributed, sold and/or supplied by Defendants, was defective due to inadequate testing.

33.   Further, the pharmaceutical drug Zyprexa (Olanzapine), designed, manufactured, distributed, sold and/or supplied by Defendants, was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign.

34.   Additionally, Defendants failed to provide timely and adequate warnings or instructions after the manufacturer knew of the risk of injury from Zyprexa (Olanzapine).  Plaintiff's injuries, as hereinbefore described, were the proximate result of the defective condition of Zyprexa (Olanzapine) which was unreasonably dangerous to Plaintiff as the ultimate consumer when put to its intended use.

8

WHEREFORE, Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III

### (Negligence)

35.  Plaintiff realleges paragraphs 1-34 of the Complaint as if set out in full herein.

36.  At all times herein mentioned, Defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

37.  At all times herein mentioned, Defendants knew, or in the exercise of reasonable care, should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

38. Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

39. Defendants were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew, or should have known, that Zyprexa

caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiff.

40. As a result of the carelessness and negligence of Defendants, the aforesaid product caused Plaintiff to thereby sustain the damages and injuries as herein alleged.

**WHEREFORE,** Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

### (Breach of Implied Warranty)

41. Plaintiff realleges paragraph 1-38 of the Complaint as if set out here in full.

42. At all times mentioned herein, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiff, Defendants impliedly warranted to Plaintiff, and to her agents, that the product was of merchantable quality and safe for the use for which it was intended.

43. Plaintiff and her agents relied on the skill and judgment of Defendants in using the aforesaid product.

44. The product was unsafe for its intended use and it was not of merchantable quality as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or

reasonably scientifically knowable at the time of distribution. The aforesaid product did cause Plaintiff to sustain damages and injuries as herein alleged.

45. After Plaintiff was made aware of her injuries as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

**WHEREFORE**, Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V

### (Breach of Express Warranty)

46. Plaintiff realleges paragraphs 1-43 of the Complaint as if set out fully herein.

47. The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff and other members of the general public.

48. At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

49. Plaintiff and her physicians reasonably relied upon the skill and judgment of Defendants and upon said express warranty in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid

11

product could and did thereby cause Plaintiff to sustain damages and injuries as herein alleged.

50. As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, Defendants were notified of the breach of said warranty.

**WHEREFORE**, Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VI

### (Fraud)

51. Plaintiff realleges paragraphs 1-48 of the Complaint as if set out fully herein.

52. Defendants falsely and fraudulently represented to Plaintiff, her physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder. The representations by said Defendants were in fact, false. The true facts include, but are not limited to, the fact that the aforesaid products were not safe for said purpose and were, in fact, dangerous to the health and body of Plaintiff.

53. The representations by Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to, the development of diabetes mellitus and/or metabolic syndrome, that the products caused injuries, including but not limited to diabetes mellitus, and metabolic syndrome and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants

12

misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder treatment, and concealed warnings of the known or knowable risks of injury in using the products.

54. When said Defendants made these representations, they knew they were false. Defendants made said representations with the intent to defraud and deceive Plaintiff and with the intent to induce her to act in the manner herein alleged, i.e., to use the aforementioned product to aid in treatment of bipolar disorder.

55. At the time Defendants made the aforesaid representations and at the time Plaintiff took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff was induced to, and did, use the aforesaid product as herein described. If Plaintiff had known the actual facts, she would not have taken such action. The reliance of Plaintiff and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

56. As a result of Defendants' fraud and deceit, Plaintiff was caused to sustain the herein described injuries and damages.

57. In doing the acts herein alleged, Defendants acted with oppression, fraud and malice, and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendant.

13

WHEREFORE, Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

### (Negligent Misrepresentation)

58. Plaintiff realleges paragraphs 1-56 of the Complaint as if set out fully herein.

59. Defendants had an absolute duty to disclose the true facts regarding the safety of Zyprexa as the only entities capable of knowing and reporting the true facts regarding the safety and testing of Zyprexa. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

60. Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient representations. Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

61. The aforesaid representations were made to the physician prescribing Zyprexa prior to the date it was prescribed to Plaintiff and the physician relied on the representations about the safety of Zyprexa when prescribing Zyprexa to Plaintiff.

62. At the time the aforesaid representations were made, Defendants concealed from Plaintiff and her physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

14

63. The aforesaid representations were made by Defendants with the intent to induce Plaintiff to act in the manner herein alleged, that is, to ingest Zyprexa as prescribed.

64. Defendants falsely represented to Plaintiff, her physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder. The representations by said Defendants were in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff and thereby caused her injuries.

65. Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representation.

66. At the time Defendants made the aforesaid representations, and at the time Zyprexa was prescribed to Plaintiff, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff ingested Zyprexa as herein described. If Plaintiff had known the actual facts, she would not have taken such action. The reliance of Plaintiff and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities that appeared to be in a position to know the true facts.

67. As a result of Defendants' false representations and concealment, Plaintiff was caused to sustain the herein described injuries and damages.

WHEREFORE, Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VIII

### (Fraud by Concealment)

68. Plaintiff realleges paragraphs 1-65 of the Complaint as if set out herein.

69. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff, and to her physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants withheld the above to Plaintiff, her physicians and the general public prior to the date Zyprexa was prescribed to Plaintiff, while concealing the following material facts.

70. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but limited to, excessive weight gain, metabolic syndrome, and/or diabetes mellitus.

71. At all times herein mentioned, Defendants intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians and therefore from Plaintiff, with the intent to defraud as herein alleged.

72. At all times herein mentioned, neither Plaintiff nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have

acted as they did, that is, would not have utilized the product to aid in treatment of bipolar disorder.

73. As a result of the concealment or suppression of the facts set forth above, Plaintiff sustained injuries and damages as hereinafter set forth.

74. In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiff demands judgment against all Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

Respectfully submitted,

E. Frank Woodson (WOO034),
Attorney for Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36104
Telephone: (334)269-2343
Facsimile: (334)954-7555

17

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all counts in this cause.

OF COUNSEL

**Defendant's Address for Service:**

ELI LILLY AND COMPANY
National Registered Agents Inc
150 South Perry Street
Montgomery, Alabama  36104

IN THE CIRCUIT COURT OF
BULLOCK COUNTY, ALABAMA

| | | |
|---|---|---|
| SANQUIRNETTA MCCRAY-MARTIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | CIVIL ACTION NO. _CV-2005- 107_ |
| | ) | |
| **ELI LILLY AND COMPANY; and** | ) | |
| **YOLANDA BROWN, Sales** | ) | |
| **Representative, and FICTITIOUS** | ) | |
| **DEFENDANTS A, B, C, D, E, and F,** | ) | |
| being those persons, sales | ) | |
| representatives, firms or corporations | ) | |
| whose fraud, scheme to defraud, | ) | |
| negligence, and/or other wrongful | ) | |
| conduct caused or contributed to the | ) | |
| Plaintiff's injuries and damages, and | ) | |
| whose true names and identities are | ) | |
| presently unknown to the Plaintiff but | ) | |
| will be substituted by amendment when | ) | |
| ascertained, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Rules 33 and 34 of the *Alabama Rules of Civil Procedure*, Plaintiff

propounds the following interrogatories and request for productions of documents to be

answered by Eli Lilly and Company, and Yolanda Brown, party Defendants, in the

manner and form prescribed by law:

## DEFINITIONS AND INSTRUCTIONS

1.    When a request for production ask you to "identify" communications,
please state the time and place of the communication, the person involved in the
communication and the details of what was communicated. If the communication was in
writing, you may attach the writing in lieu of providing a written description of the
communication.

2.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). This includes both written and non-written records of oral communications.

3.     Identify (With Respect to Persons). When referring to a person, "identify" means to give, to the extent known, the person's full name and present or last known address. When referring to any business or legal entity (which includes, without limitation, corporations, partnerships, associations, d/b/a's and enterprises); "identify" also means to give, to the extent known, the entity's full name. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.     Identify (With Respect to Documents). When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(es) and recipient(s).

5.     The term "person" is defined as any natural person or any business, legal or governmental entity or association.

6.     The terms "and," "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

7.     The term "relating to" includes referring to, relating to, embodying, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, evidencing or constituting.

8.     Terms in the plural include the singular and terms in the singular include the plural.

9.     The term "YOU" or "YOUR" shall mean Eli Lilly and Company, all of their predecessors, subsidiaries, divisions, affiliates, and agents and employees, and Yolanda Brown.

10.     The term "Zyprexa" shall mean the prescription drug Olanzapine.

11.     The term "on-going studies" shall mean any toxicological, clinical, or epidemiological research pertaining to the potential health consequences of using Zyprexa and which research has not yet been concluded.

12.     Each request for production hereinafter set forth not only calls for your knowledge, but also for all knowledge that is available to you by reasonable inquiry, including inquiry of your representatives, agents, and investigators.

- 2 -

## INTERROGATORIES

1.     Please identify all persons who provided any information or assistance in answering these interrogatories.

2.     Please identify all detailmen or sales representatives, including specifically, but not limited to Yolanda Brown, who were responsible for providing information or assistance concerning Zyprexa to physicians or pharmacies in Alabama.

3.     Have you ever received or obtained any information relating to whether Zyprexa, used by itself or in combination with any other substance, could potentially cause or contribute to significant weight gain, diabetes, metabolic syndrome, ketoacidosis, and/or hyperglycemia. If the answer is yes, please answer the additional questions listed below:

    a.  When did you first receive or obtain the information;

    b.  What was the nature of the information and from whom did you obtain it;

    c.  What additional study or investigation did you do after you received the information? Include in your answer the date that each part of the study or investigation was started, the nature of such study and investigation, and the results of such study and investigation;

    d.  From the time you first received or obtained information on the subject, please describe, in narrative fashion, what information you received or obtained and when you received or obtained it;

    e.  What information, if any, was disclosed to physicians on the subject, and when was such information disclosed;

    f.  What information, if any, was disclosed to the FDA or other regulatory agencies on the subject, and when was it disclosed;

    g.  What information, if any, was disclosed to patients and prospective patients on the subject and when was it disclosed; and

    h.  Identify the person(s) employed by YOU who were involved in doing work or making decisions concerning the studies, investigations and disclosures referenced above.

- 3 -

4.    Identify all individuals who had any involvement in making decisions regarding the preparation of, or changes to, the package inserts and/or labels for Zyprexa.

5.    Please identify all individuals responsible for training sales representatives or detailmen concerning the appropriate use of Zyprexa.

6.    Please identify all individuals responsible for communicating with physicians in Alabama concerning the appropriate use of Zyprexa and any potential health hazards, side effects and/or adverse events associated with the use of Zyprexa.

7.    Please identify all individuals, including specifically, but not limited to Yolanda Brown, responsible for marketing or promoting Zyprexa in Alabama.

8.    Please identify all tests, including all animal and clinical studies, which you ever performed, requested performed, funded, or have in YOUR possession which examined the potential for Zyprexa used by itself, or in combination with any other substance, to cause significant weight gain, diabetes, metabolic syndrome, ketoacidosis, and/or hyperglycemia.

9.    Please list all "ongoing studies" concerning the potential for Zyprexa used by themselves, or in combination with any other substance, to cause significant weight gain, diabetes, metabolic syndrome, ketoacidosis, and/or hyperglycemia.

10.    Please identify any advertising, public relations or communications professionals (whether employed inside or outside of the company) who were consulted concerning any of the following issues:

a.  The content of package inserts and/or labels used for Zyprexa;

b.  The content of any promotional material for Zyprexa directed at physicians;

- 4 -

c.  The content of any promotional material for Zyprexa directed at the ultimate users of the drug;

d.  Any decision to remove Zyprexa from the market and the contents of the communications concerning such decision;

e.  Any decision to prescribe Zyprexa in conjunction with any other substance as opposed to prescribing Zyprexa on its own.

f.  The decision to limit the availability of Zyprexa in the United States;

g.  The preparation of any witness testimony concerning the safety of Zyprexa;

h.  The publication or promotion of any books or articles regarding Zyprexa;

i.  The development or implementation of "grass roots" efforts to assist in marketing Zyprexa or defending Zyprexa against criticism, including any effort to develop and train a network of spokespersons;

j.  The performance of any "focus group" research regarding the promotion or use of Zyprexa.


11.    Please list and describe each and every database that your company has used to contain, compile or process information pertaining to communications from any source related to adverse health affects potentially associated with the use of Zyprexa.


12.    If YOU have destroyed any records pertaining to the design, testing, manufacture, marketing or distribution of Zyprexa, please identify each document destroyed, the date each document was destroyed, the general contents of each document destroyed, the person who authorized the destruction of the document, and the reason for the destruction of each document.


13.    Please list each research group, support group, or institution (public or private) to which your company has given any money to perform any diabetes-related research. Please specify the date and amount of each contribution.

14.    Please describe YOUR involvement in the manufacture, packaging, distribution and/or marketing of Zyprexa, including the specific identity of each entity involved and that entity's specific involvement.

15.    Identify any other entity with rights or interest in the manufacturer and/or marketing of Zyprexa in the United States and its territories.

16.    Identify every study, publication or other learned treatise that addresses the subject of the safety and/or effectiveness of Zyprexa.

17.    State the unit cost of Zyprexa to YOU, the amount charged per unit of Zyprexa sold by YOU, the per unit profit to YOU from the sale of Zyprexa, and the number of units of Zyprexa sold by YOU.

18.    With regard to Zyprexa, please identify the responsible individual(s):

    a.    Director and/or Vice President and/or individuals responsible for Medical Affairs.

    b.    Director and/or Vice President and/or individuals responsible for Post Marketing Safety Surveillance.

    c.    Director and/or Vice President and/or individuals responsible for Public Relations.

    d.    Director and/or Vice President and/or individuals responsible for Clinical Research.

    e.    Director and/or Vice President and/or individuals responsible for Regulatory Affairs.

    f.    Director and/or Vice President and/or individuals responsible for Product labeling.

g. Director and/or Vice President and/or individuals responsible for Marketing.

h. Director and/or Vice President and/or individuals responsible for Planning of Zyprexa.

i. Director and/or Vice President and/or individuals responsible for Research.

j. Director and/or Vice President and/or individuals responsible for New Products.

k. Director and/or Vice President and/or individuals responsible for Clinical Research.

l. Director and/or Vice President and/or individuals responsible for Sales and/or Marketing.

m. Medical Monitors or other Health Care Professionals responsible for medical issues related to Zyprexa.

n. Director and/or Vice President and/or individual responsible for Medical Monitoring.

o. Director and/or Vice President and/or individual responsible for Liaison with the Food and Drug Administration.

p. Director and/or Vice President and/or individual responsible for Research and Development.

q. Individuals responsible for presenting Zyprexa to the Food and Drug Administration for approval.

r. Individuals who were lobbyists for Zyprexa to the Food and Drug Administration.

s. Members of the Board of Directors since Zyprexa has been on the market.


19.    Please state the full name, current and complete address, phone number, position, capacity, and job title of each person who has assisted in answering these Interrogatories on behalf of the Defendants.

20.    Describe the corporate organization of your company, including the identity and location of all divisions, branches, affiliates, subsidiaries, parents and related entities and the identity of each of its officers and directors.

21.    Prior to releasing Zyprexa for sale, were any studies, tests, investigations, examinations, reviews or analysis (hereinafter referred to collectively as "study") conducted to determine potential health hazards involved in the safety of Zyprexa?  If so, set forth in detail the kinds and types of studies that were conducted, the identity and relationship to you of the person or entity who conducted such studies, the date and place of each study, and the results of each study.  (If the results of the study were reduced to writing, please attach copies of same hereto.)

22.    Prior to the releasing of Zyprexa for sale, were any studies, tests, investigations, examinations, reviews or analysis (hereinafter referred to collectively as "study") conducted by you or on your behalf or known to you relating to Zyprexa hazards, disease, illnesses or injuries and/or the safety aspects concerning Zyprexa?  If so, set forth in detail the kinds and types of studies that were conducted, the identity and relationship to you of the person or entity who conducted such studies, the date and place of each study, and the results of each study.  (If the results of the study were reduced to writing, please attach copies of same hereto.)

23.    When and how did you first learn about any significant weight gain, diabetes, metabolic syndrome, ketoacidosis, and/or hyperglycemia problems and their association with Zyprexa?

24.    List and describe each complaint or notice of problems or adverse events received by, or known to you, regarding the use of Zyprexa, including the date of the incidents and the date you received notice.  (In response to this interrogatory, you may redact the names of the reports of adverse events in compliance with any applicable FDA regulation).

25.    For each complaint or notice of problem or adverse event listed in the preceding interrogatory, please describe the actions you took in response to each such complaint or notice of problems or adverse event.  (This interrogatory asks what actions were taken after receipt of such complaint or notice of problem or adverse event, not just

whether defendant made any changes as a result of such complaint or notice of problem or adverse event).

26.     Did you ever form any committees, groups, panels, or boards in order to address the problems you learned of concerning Zyprexa?  If so, please state the name of the committee, the year of formation, whether it is still active, and the members.

27.     Were you, or any of your employees, ever a member of any committees, groups, trade associations, panels, boards, or any other organizations which addressed the problem of any risks, hazards, injuries of damages attendant to taking Zyprexa?  If so, please identify such entity by name, by what name it was formed or organized, the date it was formed, and the employees who served on such entities.

28.     Identify all written communications, including internal minutes of all meetings and notes therefrom, within the Defendants referring to adverse reactions, hazards, diseases, illnesses or injuries relating to the use of Zyprexa, or changes in labels or warnings to patients or health care providers regarding Zyprexa.

29.     To the extent not listed in your responses to the previous interrogatory, please identify all communications between Defendants and the federal government or governmental agency or organization, regarding adverse reactions and/or hazards relating to the use of Zyprexa, or changes in labels or warnings to patients or health care providers regarding Zyprexa.

30.     State whether you gave any written instructions and/or warnings or mailed any "Dear Doctor" or "Dear Customer" or "Dear Healthcare Professional" letters or developed educational programs to or for purchasers or users of Zyprexa which you manufactured or distributed and describe each such instructive warning, letter and/or program and the manner in which it was given.

31.     Have the Defendants ever issued any warnings regarding real or potential adverse reactions and health risks as a result of complaints or occurrences involving Zyprexa?  If so, please state the date the action was taken, the defect or hazard to which

the action was addressed, and the name, address and job title of the person who ordered, directed or authorized such action.

32.    With regard to the changes in the Zyprexa labeling/package insert, please identify the date and nature of each labeling change after the drug's approval by the FDA. (In lieu of a written response, you may attach to your answers the package labels).

33.    Identify the people within the Defendants who were principally involved in the decision whether to place additional warnings, if any, on package inserts of Zyprexa, or to accompany the product in any manner in 2003.

34.    Identify the people within the Defendants who were principally responsible for coordinating warnings and labeling issues for Zyprexa with the federal government in 2002-2003.

35.    Have you ever undertaken a cost analysis relative to Zyprexa damages and/or injuries regarding the cost of remediation versus the cost of potential litigation?  If so, please identify each such document pertaining to such an analysis.

36.    Please identify the current custodian(s) and whereabouts of all studies or tests made with respect to the drug Zyprexa.

37.    Identify any and all insurance and/or indemnifying agreements which may indemnify you, in whole or in part, to satisfy a judgment which may be obtained against you in this action, or to indemnify or reimburse for payments made to satisfy the judgment, including any excess coverage or umbrella insurance, and with respect to each, please state the carrier's name and the limits of liability coverage.

38.    State the names and addresses of all experts whom you intend to call as witnesses at the trial of this matter.  If any have prepared a report of his or her findings, please attach a copy of the report to your answers to these interrogatories.  In addition, please state the subject matter upon which each such expert is expected to testify, the

substance of the facts and opinions to which each such expert is expected to testify, and provide a summary of the grounds for each opinion.

39.    If it is your contention that the Plaintiff's injuries were caused in whole or in part by some person or persons other than yourself, please identify each such person and professional relationship to you, if any.

40.    If it is your contention that the Plaintiff, by any act or omission, caused or contributed to their injuries, please state in detail each such act or omission by them.

41.    Identify each person who has given you a written, recorded or oral statement concerning the circumstances of this case, including the names, addresses and telephone numbers of each such person.

42.    If you have within your control photographs or diagrams of the Plaintiff or anything having to do with the occurrence in this case, or persons connected with the occurrence, and/or videotapes regarding any element of them, set forth a description of same and describe the contents of any photographs, videotapes or the like, and the dates taken, and the person or persons taking them.

43.    If you contend that the Plaintiff made any oral statements which constitute an admission with reference to any of the issues raised in this case, please state the content of each statement, the date, the time, the place of each statement, and the names and occupations of each person who heard each statement.

44.    Identify each person not heretofore mentioned having personal knowledge of facts material to this case, including the name, address and telephone number of any such person.

45.    For each Request for Admission that you did not unequivacally admit, please state the following:

a.    State each and every fact upon which you base your reason for not admitting the request;

b.    Please provide a copy of each and every document you considered when deciding not to admit the request; and

c.    State any reason upon which you based your denial.

46.    Please state and provide each "Dear Doctor" letter that was sent to Dr. Fernando Lopez. Identify the letter sent, state the date that each letter was actually sent, state the person to whom each letter was actually sent, state the address the address where it was sent, identify the database or documents that demonstrate these facts, and identify the person who provided information responsive to this request.

47.    Please identify any Professional Information Requests letters that Lilly believes were sent to Dr. Fernando Lopez. State the date each letter was sent and the address where each letter was sent.

48.    Please identify all contacts between Lilly's sales representatives and the Dr. Fernando Lopez. Identify last known address and telephone number of Lilly representative, the current relationship between Lilly and the sales representative, and the date(s) of contact.

49.    Please state whether Lilly or its representatives ever provided Dr. Fernando Lopez with Zyprexa samples. If yes, please state: 1) the number or sample packets provided and dosages provided; 2) the dates they were provided; and 3) the person or person who provided the samples.

50.    Please state whether Dr. Fernando Lopez was ever invited to attend and/or did in fact attend any Lilly-sponsored conferences or events. If yes, please identify the consultant, the title of the meeting(s), the date(s), the location(s), the topic(s), and all speakers on the program(s).

51.    Has Dr. Fernando Lopez ever contacted Lilly to request information concerning Zyprexa, its effects and/or risks?

52.    Does Lilly have access to any database or information which purports to track Dr. Fernando Lopez's prescribing practices with respect to Zyprexa prescribed, the number of prescriptions, the number of refills, and the time frame when these prescriptions were prescribed or refilled.

53.    Have you contacted Dr. Fernando Lopez concerning Plaintiff?

54.    Please produce a copy of any MedWatch form which refers or relates to Plaintiff, including back-up documentation concerning Plaintiff and any evaluation you did concerning Plaintiff.

55.    Did you ever advertise Zyprexa in central and southern Alabama? If yes, please identify the media outlets, the dates the advertisements ran, the nature of the media, and the identity of the advertisements.

- 12 -

## REQUESTS FOR PRODUCTION

Plaintiff specifically requests that the Defendants produce the following:

1.      The protocol(s) established by Defendants for the clinical testing of Zyprexa.

2.      The written procedures established by Defendants at any time during the development and marketing of Zyprexa to address reports Defendants or others received from clinical trials or post-marketing experience.

3.      The protocols, procedures and guidelines that were employed by Defendants at any time during the clinical trials and post-marketing experience with respect to how the Defendant responded or was to respond to reports received from:

        a.      consumers;

        b.      health professionals; and

        c.      others;

4.      Records sufficient to identify each and every patent holder of the drug marketed as Zyprexa, by name, address, the patent number, the manner in which Zyprexa is utilized in such patent.

5.      Each and every contract between the Defendants, other patent holders or others regarding the development, manufacturing and marketing of the drug Zyprexa.

6.      Copies of all advertising text - whether printed, published on the web, radio, television or otherwise - concerning the drug Zyprexa that was addressed to

        a.      physicians;

        b.      pharmacists;

        c.      consumers - in English text; and

        d.      consumers  - in any foreign language text.

7.      The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in the development of the drug Zyprexa. These costs are to be itemized by line item in the manner in which the Defendants accounted internally for its costs and not summarized in any manner beyond those totals or sub-totals created in the Defendants' accounting records.

- 13 -

8. The Defendants records of account that demonstrate the costs incurred or otherwise paid by the Defendants in conducting its clinical trials of Zyprexa.

9. The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in presenting the drug Zyprexa to the Federal Drug Administration. This request includes, but is not limited to, all costs incurred or otherwise paid by the Defendants to apply for "fast track" status, to present information to the advisory panel(s), to hire consultants or representatives and other incidental costs.

10. The Defendants' records of account that demonstrate the name, address, position and assigned responsibilities or duties of each and every "consultant" that Defendants employed as a part of its development, clinical trials, FDA presentations or marketing efforts from inception of Zyprexa to the present.

11. All adverse event reports sent to, gathered and maintained by the Defendants regarding Zyprexa.

12. The complete records of each investigation conducted by the Defendants, or on behalf of the Defendants, in response to the reports responsive to Request for Production No. 11 above.

13. True and complete copies of all press releases and public statements made by Defendants or on its behalf with regard to Zyprexa from their inception to the present.

14. True and complete copies of the transcripts of any/all statements and appearances made before the Federal Drug Administration concerning Zyprexa.

15. True and complete copies of the records of all proceedings of the FDA - whether advisory panel or otherwise - concerning Zyprexa that are in the possession of Defendants or its agents.

16. The complete text of all drafts and final versions of the product information leaflets or brochures that were intended for publication or other distribution to doctors, pharmacists and/or consumers concerning Zyprexa.

17. The complete text of all drafts and final versions of correspondence that Defendants directed to physicians concerning Zyprexa from their inception to the present.

18. The complete text of all drafts and final versions of statements that Defendants have made to its stockholders concerning the development and marketing of Zyprexa, any adverse event reports and/or the FDA mandated changes to the warnings that were to accompany Zyprexa.

19. These Defendants' records showing its projection of sales of the drug Zyprexa in any and all markets. These records are to be produced in the most detail

- 14 -

accumulated by Defendants as well as any summaries of that data, and should include demographic or sociographic information available to the Defendants.

20.     These Defendants' records showing the actual sales of the drug Zyprexa in any and all markets. These records are to be produced in the most detail accumulated by Defendants as well as any summaries of that data, and should include demographic or sociographic information available to the Defendants.

21.     All materials and information that Defendants, its agents, representatives and employees may have relied on to deny or discount any "primary suspect" report by healthcare providers of deaths for any reason. This request includes, but is not limited to, any/all reports or opinions that Defendants, its agents, representatives and employees may have acquired from consultants and/or independently retained experts.

22.     All insurance agreements or policies under which a person transacting insurance may be liable to satisfy part or all of a judgment which may be entered in this civil action or to indemnify or reimburse for payments made to satisfy the judgment. It is further requested that a verified or attested copy of the declaration sheet relating to any of the aforementioned insurance policies also be produced.

23.     All documents or records of the Defendants relating to any advertisements for Zyprexa, whether in professional journals or not.

24.     All documents concerning any warnings, instructions for use, or other matters concerning the use and/or consumption and possible health risks regarding Zyprexa.

25.     All documents containing instructions or warnings for the ultimate consumers of Zyprexa. (For each such document, state the effective date or inclusive dates for distribution of use of such instructions or warnings).

26.     All documents concerning any changes, modification, alteration, and/or reformation of Zyprexa.

27.     All documents of the Defendants showing quality control, testing, analysis and health studies such as indications, contraindications, side effects, interactions, and adverse experiences, effects, or events concerning Zyprexa.

28.     All published literature in the possession of the defendant concerning Zyprexa.

29.     Any documents of which Defendants have knowledge of concerning or relating to the adverse reactions, experiences, effects or events regarding Zyprexa.

30.     All clinical studies of which Defendants have knowledge of the adverse reactions, experiences, effects or events of Zyprexa.

31. All documents relating to adverse reaction, experiences, effect or event reports as well as investigations of the same, including all notes, memos, letters, reports, files, articles, or any written or computer generated or stored information from any person or source whatsoever, authored as a consequence of the result of any such investigation which discusses, relates or concerns the adverse reaction of Zyprexa.

32. All documents sent to the FDA regarding Zyprexa.

33. All documents received from the FDA concerning Zyprexa.

34. Copies of any warnings, precaution, informational letters, promotions, detail ads, which discuss Zyprexa. (For each such document, state the effective date or inclusive dates for distribution or use of such document).

35. Copies of all 10K's filed by or concerning this defendant from 1995 through the present.

36. Copies of all annual reports to shareholders of the Defendants from 1995 through the present.

37. Copies of all package inserts for Zyprexa. (For each such document, state the effective date or inclusive dates for distribution or use of such document.).

38. Copies of all documents that indicate, discuss or show the following:

      a.   Gross sales of the Defendants, cumulatively and/or for each year since Zyprexa was first marketed in the United States; and

      b.   Gross sales for Zyprexa, cumulatively and/or for each year since Zyprexa was first marketed in the United States.

39. Please identify the full names and corporate titles and addresses of the employees of the Defendants having the most significant responsibilities for the development, licensing and marketing of Zyprexa, and as to each such person state the job titles, the inclusive dates during which such person held that job title, and describe briefly the area of responsibility with respect to Zyprexa.

40. Please provide the text of any and all warnings or instructions to physicians and/or patients and consumers about the adverse effects in connection with Zyprexa, and explain in detail any variation in terminology regarding side effects, contraindications, precautions and warnings. (For each such document, state the effective date or inclusive dates for distribution or use of such document.).

41. Any and all studies regarding the safety and effectiveness of Zyprexa.

- 16 -

42. All reports and other documents provided to the FDA or other governmental organization regarding complications, contraindications, hazards, side effects, or adverse experiences, effects or events from the use of Zyprexa, whether used as monotherapy or in conjunction with any other therapy.

43. Provide a detailed privilege log of all documents that have been removed from any file or not produced because of the attorney/client privilege, work product doctrine, trade secret or confidential business information, or other privilege or basis for nondisclosure.

44. If the Defendants have relied upon or referred to any documents in answering any interrogatory, please attach copies of each such document to your answers.

45. Documents reflecting the total number of patients worldwide which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects died from, or suffered personal injury or symptoms (whether possibly, probably, or definitely related to Zyprexa as determined by Defendants and not by principal investigators, researchers, or prescribing physicians who were not affiliated or associated with Defendants in any way) caused by Zyprexa, from the date of the first human clinical trial research on Zyprexa through the date of this request. This includes, but is not limited to, all human clinical trials and studies, whether conducted in the U.S. or abroad.

46. Documents reflecting the exact total number of patients worldwide which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects, died from or suffered personal injuries (whether possibly, probably, or definitely related to Zyprexa as determined by Defendants and not by principal investigators or researchers or prescribing physicians) caused by Zyprexa, from the date the NDA for Zyprexa was submitted to the FDA through, and including the date Zyprexa was first marketed. Please provide the inclusive dates referred to. (This includes deaths or injuries that occurred during human clinical trials or during the post-marketing period in any foreign country. This includes any patients who were withdrawn from any clinical trial for any reason, medical or otherwise, whether or not Defendants believe the deaths or injuries were causally related to Zyprexa).

47. A copy of the entire animal case study file for each and every animal that experienced abnormal test results from the initiation of the first animal studies, whether within the U.S. or abroad, through the date of this request. This includes all animals which experienced abnormal test results during the studies due to any cause, whether Defendants concluded or determined they were related to Zyprexa to any degree (possibly, probably, or definitely) or not. This includes any animals which were withdrawn or removed from the studies or not included in the final results for any reason, whether medical, health, or otherwise.

- 17 -

48.    Documents reflecting the exact total number of worldwide patients which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects experienced *any* abnormal tests or test results as a result of Zyprexa (whether possibly, probably, or definitely related to Zyprexa as determined by Defendants and not by principal investigators or researchers, or prescribing physicians who were not affiliated with Defendants in any way at any time from the date of the first human Zyprexa clinical trials and post-marketing experience, whether conducted in the U.S. or abroad. (This includes any patients who were withdrawn from any clinical trial for any reason; medical or otherwise, whether or not Defendants believe the abnormalities were causally related to Zyprexa).

49.    A copy of the entire patient study file and medical records for each patient identified in the preceding request who were reported to the FDA in the IND/NDA for Zyprexa. (This request does not include any personal identification information about the patients. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege).

50.    Documents reflecting the exact total number of worldwide patients who ever received Zyprexa at any time from the date of the first Zyprexa human clinical trials, whether conducted in the U.S. or abroad to the date of this request, and experienced *any* abnormal test results, but did not die as a result thereof, which Defendants (and not principal investigators or researchers, or prescribing physicians who were not affiliated with Defendants in any way)  determined were possibly, probably, or definitely not causally related to Zyprexa which were not reported to the FDA in the IND/NDA for Zyprexa. This includes any patients who were withdrawn from any clinical trial for any reason, medical or otherwise, whether or not Defendants believe the abnormalities were causally related to Zyprexa.

51.    Documents reflecting the total number of clinical trial patients worldwide who began each separate human Zyprexa clinical study who were withdrawn from the study or did not complete it for any reason, regardless whether or not Defendants believe the reason for the withdrawal was, or was not causally related to Zyprexa. Please identify the patient study number of each patient who was withdrawn.

52.    A copy of the entire patient case study file and medical records for each patient who was withdrawn or otherwise did not complete the clinical trial who is included in the preceding request.  (This request does not include any personal identification information about the patients.  Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege).

53.    Any and all tangible correspondence sent to and received from any person involved in each separate clinical trial study for Zyprexa worldwide, including but not limited to, principal investigators, co-investigators, sub-investigators, technicians, their staff or any other person who in any way participated in the clinical trials. This includes, but is not limited to, any and all letters, reports, e-mails or any other source tangible data

- 18 -

transmission, whether electronic or otherwise.  (This includes, but is not limited to, adverse events, general observations of results during trials, preliminary study reports, or any other reference to results, problems, successes, general correspondence about Zyprexa, etc. observed during clinical trials).

54.    Any and all tangible internal correspondence, person specific and/or general, including but not limited to, memos, e-mails or other electronic data transmissions, to and from all sales and marketing personnel employed by, retained by, associated with, or in any way affiliated with Defendants, which in any way discusses, relates to, or involves Zyprexa.  (This includes, but is not limited to, adverse events, how to discuss potential safety concerns with prescribing physicians and pharmacists, sales strategies, marketing and advertising).

55.    An entire copy of each and every Zyprexa patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, prior to submission of the NDA, from any source, including but not limited to, human Zyprexa clinical trial studies, both within the United States and abroad which Defendants determined or concluded was definitely, probably, or possibly, not causally related to Zyprexa and which was not included in the IND/NDA for Zyprexa or reported or provided to the FDA thereafter through the date of this request.

56.    An entire copy of each and every Zyprexa patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, after submission of the IND/NDA from any source, including but not limited to, human Zyprexa clinical trial studies, both within the United States and in foreign countries which Defendants determined was definitely, probably, or possibly, not causally related to Zyprexa and which was not reported or provided to the FDA thereafter through the date of this request.

57.    An entire copy of each and every Zyprexa patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, prior to submission of the NDA, from any source, including but not limited to, human Zyprexa clinical trial studies, both within the United States and abroad, which Defendants determined was definitely, probably, or possibly causally related to Zyprexa and which was not included in the IND/NDA for Zyprexa or reported to the FDA thereafter through the date of this request.

58.    An entire copy of each and every Zyprexa patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, after submission of the NDA from any source, including but not limited to, human Zyprexa clinical trial studies, both within the United States and abroad which Defendants

- 19 -

determined was definitely, probably, or possibly causally related to Zyprexa and which was not reported to the FDA thereafter through the date of this request.

59.    Any and all internal memos, internal or external correspondence and e-mails, including, but not limited to, any form of electronic data transmission to, or from Defendants, including, but not limited to, any employee, agent, director, officer or other personnel under the direct control of Defendants, to, or from, any other personnel, including but not limited to, any persons involved in the clinical trials for Zyprexa, other clinical researchers, physicians, the FDA or any other regulatory agency which in any way discuss, involve, or relate to the decision to withdraw or limit access to Zyprexa from/to the market.  This includes all information generated from the date of the first report of adverse events in the U.S. or abroad, through the date of this request.

60.    A copy of each and every Zyprexa patient study file and medical records involving patients who ever participated in Zyprexa human clinical trial.  Please redact all personal patient data including, but not limited to, names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege. This includes any patients who were withdrawn from any clinical trial for any reason-medical or otherwise, regardless whether or not Defendants believes the reason for withdrawal was causally related to Zyprexa.

61.    Any and all internal correspondence, memos and e-mail or other electronic data transmission to or from Defendants' sales and marketing staff and personnel, including, but not limited to, Zyprexa drug sales representatives and their managers, which in any way relates to, involves, or discusses what information regarding adverse events, should, or should not, be provided to, or discussed with prescribing physicians, pharmacists or clinical investigators or their staff.

62.    Any and all correspondence, memos, e-mails or other forms of electronic data transmissions, to or from any external source (i.e., generated by someone who is not an agent, servant, employee, director, officer or other personnel under the direct control of Defendants), including, but not limited to, principal investigators and their staff, prescribing physicians, pharmacies, which in any way discusses, involves or relates to specific adverse events or general patient health concerns related to Zyprexa.

63.    Any and all internal memos, correspondence, e-mails or other electronic data transmissions to or from any agent, employee, officer, director or other person under the direct control of Defendants, which in any way discusses, involves, or relates to the Defendants' denial of, conscious refusal to concede, admit, conclude, acknowledge, or express any opinion, publicly or privately, that Zyprexa caused any health problems or injuries, including, but not limited to the heart, blood, or other organ system or body metabolic function.

64.    Documentation of any and all direct, or indirect, compensation paid to any principal or co-investigators, their staffs, families, or any other persons associated with the clinical trial studies of Zyprexa for any reason.  This includes, but is not limited to,

- 20 -

copies of direct cash payments, canceled checks, money orders, wire transfers, indirect compensation such as travel expenses, meals, entertainment, gifts, honorariums, also including, but not limited to, any and all forms of valuable consideration including securities and equities in Defendant's company or any company legally associated or affiliated with Defendants' company, including, but not limited to, stock ownership, options, warrants, bonds or other securities, which the recipient realized a tangible economic value at the time of the receipt or thereafter.

65.    A copy of all expenses related to travel and entertainment (as defined by the applicable Internal Revenue Code Section) paid by Defendants directly, or indirectly, to, or on behalf of any clinical investigation personnel, their staff or families, associated with the clinical trial studies of Zyprexa. This includes, but is not limited to, payment for any and all expenses related to seminars, endorsements of these Defendants' products, drugs or services; gratuitous tickets to entertainment events such as sporting events, arts, general entertainment (opera, plays, etc.), payment for meals, personal gifts or any other goods or services in which the recipient received an indirect economic benefit.

66.    A copy of the minutes of each and every committee meeting held by Defendants that in any way related to Zyprexa, including, but not limited to, pre-marketing safety concerns, adverse events, market strategies, potential market penetration, potential profits, potential sales, decisions to withdraw or limit access of Zyprexa from/to the market, strategies regarding how to respond to and deal with FDA concerns, strategies to persuade any person that adverse events related to Zyprexa were not serious and should be dismissed, ignored or downplayed; potential loss of sales and profits-- whether due to safety concerns with Zyprexa or loss of market share from competing type diabetic drugs; package insert revision discussions, or any other subject matter related to the research, development, marketing, sales and safety concerns relating to Zyprexa.

67.    Any and all documentation of the account of the gross and net profits, including all incurred expenses, received by, and incurred by Defendants, relating to the sale and marketing of Zyprexa worldwide. This specifically requests the Defendants' own accounting calculations of gross sales, expenses, net profits and other financial effects or impacts of Zyprexa on Defendants' ongoing profits and operation.

68.    A copy of any and all documentation, including but not limited to correspondence, internal memos, personal notes, e-mails, electronic data transmissions, medical publications, journals, Defendants' committee meeting minutes, news reports, or any other source, regarding the decision by Defendants to withdraw or limit access to Zyprexa from/to the market.

69.    A copy of any and all correspondence, including, but not limited to letters, memo, e-mail or other electronic data transmission, sent to, received from or generated by any personnel at any other pharmaceutical manufacturer, distributor, or marketer which in any way relates to, involves, or discusses Zyprexa.

- 21 -

70. A copy of all licensing agreements between Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Zyprexa.

71. A copy of all marketing agreements between Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Zyprexa.

72. A copy of all profit-sharing, expense sharing or other financial agreements between Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Zyprexa.

73. Any and all partnership agreements, joint venture agreements, co-development agreements, or other documented legal agreements between Defendants and any other entity regarding the research and development, distribution, sales and marketing or other involvement of Zyprexa.

74. Any and all written settlement agreements with any plaintiff or claimants, whether based on pre-litigation claims or filed lawsuits relating to, or involving allegations that health related injuries were caused by Zyprexa, whether within the U.S. or within any other foreign country.

75. Any and all written agreements of any kind between Defendants and any plaintiff, claimants or their attorneys regarding the terms, or mutual conditions under which past, pending or future litigation or claims involving allegations that Zyprexa caused health related injuries will be conducted.

76. Any and all written agreements with any adverse party, including, but not limited to, plaintiffs, attorneys, or claimants, regarding involvement of any potential witnesses, in the past, pending, or future litigation or claims alleging that Zyprexa caused health related injuries.

77. The total number of lawsuits ever filed against Defendants relating to allegations that Zyprexa caused injury or adverse events, whether in the U.S., or abroad.

78. Copies of all PDR inserts for Zyprexa.

- 22 -

Respectfully submitted this 26th day of September, 2005.

_____
E. Frank Woodson (WOO034),
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, AL  36103-4160
(334) 269-2343

- 23 -

IN THE CIRCUIT COURT OF
BULLOCK COUNTY, ALABAMA

SANQUIRNETTA MCCRAY-MARTIN, )
                            )
      Plaintiff,          )
                            )
vs.                     )    CIVIL ACTION NO. _CV-2005-167_
                            )
ELI LILLY AND COMPANY; and  )
YOLANDA BROWN, Sales        )
Representative, and FICTITIOUS )
DEFENDANTS A, B, C, D, E, and F, )
being those persons, sales       )
representatives, firms or corporations )
whose fraud, scheme to defraud,   )
negligence, and/or other wrongful  )
conduct caused or contributed to the )
Plaintiff's injuries and damages, and )
whose true names and identities are  )
presently unknown to the Plaintiff but )
will be substituted by amendment when )
ascertained,                 )
                            )
      Defendants.      )

## PLAINTIFF'S FIRST SET OF REQUESTS TO ADMIT TO DEFENDANTS

Plaintiff propounds the following requests to admit to be answered by Eli Lilly

and Company, and Yolanda Brown, party Defendants, in the manner and form prescribed

by law:

1.  Admit that in October of 1999 Eli Lilly and Company (hereinafter "Lilly")

knowingly conducted a clinical study of Zyprexa that was outside the Food and Drug

Administration's safety and efficacy parameters.

2.  Admit that the study referenced in number 1 above were conducted for the

purposes of inducing physicians to prescribe Zyprexa at dosages beyond the 20 milligram

per day label.

3.  Admit that Lilly assigned the study referenced in number 1 above an alias in order to avoid drawing the attention of the FDA.

4.  Admit that Lilly used audio tapes for training sales representatives which both condoned and encouraged detailing of Zyprexa for off-label uses.

5.  Admit that Lilly received complaints from physicians that sales representatives were too aggressive in detailing Zyprexa.

6.  Admit that Lilly sales representatives aggressively promoted the use of Zyprexa by employing tactics such as demanding that physicians commit to prescribing Zyprexa to a certain number of the physicians' patients.

7.  Admit that Lilly, as early as 1998, promoted Zyprexa for off-label treatment of depression through Direct to Physicians Programs.

8.  Admit that during a two-year period beginning in September 1996 and ending in September 1998, Lilly received 197 spontaneous reports of adverse glucose events concerning Zyprexa.

9.  Admit that among the adverse event reports referenced in number 8 above, Lilly had information that 73 of those patients had glucose levels greater than 600 mg/dl, were hospitalized, or were acidotic, that 20 of those 73 patients had glucose levels greater than 1000 mg/dl, and that 2 of those 73 patients had glucose levels greater than 2600 mg/dl.

10.  Admit that the adverse events referenced in numbers 8 and 9 above were a "signals" that Zyprexa caused hyperglycemia, diabetes, and/or ketoacidosis.

11. Admit that in August of 1999 Lilly had knowledge of 126 patients with no known history of elevated glucose levels whom the majority of developed either hyperglycemia or diabetes after taking Zyprexa for less than four months.

12. Admit that as early, if not earlier, than 1999, physicians expressed concerns to sales representatives that Zyprexa caused weight gain and diabetes.

13. Admit that in a 90-day period beginning January 1, 1999 and ending March 31, 1999, Lilly received 126 reports of weight gain, 28 reports of hyperglycemia, and 21 reports of diabetes.

14. Admit that the reports referenced in number 13 above were a signal that Zyprexa caused hyperglycemia, excessive weight gain, and/or diabetes.

15. Admit that an annual review of Zyprexa's safety profile was not conducted for the year 2002.

16. Admit that Lilly employees falsified documents to indicate that an annual review of Zyprexa's safety profile was conducted in October of 2002.

17. Admit that no minutes of a formal meeting to review the safety profile of Zyprexa for the year 2002 could be located because no such document ever existed.

18. Admit that the American Diabetes Association states that a non-fasting glucose reading of 200 mg/dL indicates that a patient has diabetes.

18. Admit that Lilly used the Systeme International standard of mmol/L rather than using the U.S. standard of mg/dL in order to inflate the high for non-fasting glucose to 13.875 mmol/L (250 mg/dL).

19. Admit that using the Systeme International standard rather than the U.S. standard had the effect of causing fewer patients to meet the criteria of having diabetes for the purposes of Lilly reporting its findings to the FDA.

20. Admit that as of October 2, 2002, you were aware that patients treated with Zyprexa had a greater likelihood of developing diabetes than patients who were not treated with Zyprexa.

Respectfully Submitted,

E. Frank Woodson (WOO034),
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, AL  36103-4160
(334) 269-2343



BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES,
P.C.
*Attorneys at Law*
POST OFFICE BOX 4160
MONTGOMERY, ALABAMA 36103-4160

CERTIFIED MAIL

7124 5454 1251 3292 5279

RETURN RECEIPT REQUESTED

PLACE STICKER AT TOP OF ENVELOPE
TO THE RIGHT OF RETURN ADDRESS
FOLD AT DOTTED LINE

Eli Lilly and Company
National Registered Agents, Inc.
150 South Perry Street
Montgomery, Alabama 36104

